# UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| | : | |
| **Anthony Mark Margavitch, Jr.,** | : | Case No. 5:19-05353-MJC |
| | : | |
| Debtor. | : | |

| | | |
|---|---|---|
| **Anthony Mark Margavitch, Jr.,** | : | |
| | : | |
| Plaintiff, | : | Adversary Proceeding |
| | : | No. 5:20-00014-MJC |
| v. | : | |
| | : | |
| **Southlake Holdings, LLC,** | : | |
| **Auburn Loan Servicing, Inc.,** | : | |
| | : | |
| Defendants. | : | |

# O P I N I O N

## I. Introduction

    Before the Court are cross motions for summary judgment on Plaintiff's claim for damages relating to Defendants' alleged willful violation of the automatic stay pursuant to 11 U.S.C. §362(k). Plaintiff asserts that upon the filing of his bankruptcy case, Defendants were required to withdraw a pre-petition attachment lien or otherwise release the funds in his bank accounts subject to the attachment. Defendants argue that they took no action post-petition and the mere refusal to withdraw the attachment did not amount to a violation of the stay. For the reasons that follow, the Court concludes that no stay violation occurred and, accordingly, the Court will enter summary judgment in favor of Defendants.

1

## II. Procedural History

Debtor Anthony Mark Margavitch, Jr. ("Debtor" or "Plaintiff") filed this Chapter 13 bankruptcy case on December 17, 2019. He filed his schedules, statements, and other bankruptcy documents on the same day. On Schedule A/B, Debtor disclosed ownership of certain funds in two (2) Penn East Federal Credit Union accounts ("Penn East Accounts") in the total amount of $1,150.00. See Doc. # 1 at 15. Debtor also listed the Penn East Accounts on his Schedule C; however, the claimed exemption amount for both accounts was $0.00. See id. at 23.

On February 10, 2020, Debtor instituted this adversary proceeding by filing a complaint ("Complaint") against defendants Southlake Holdings, LLC and Auburn Loan Servicing, Inc. (collectively, "Defendants"). The Complaint asserts four (4) counts: Count I – Violation of the Automatic Stay; Count II – Secured Status; Count III – Turnover; and Count IV – Injunctive Relief. Defendants filed an answer on March 19, 2020. Doc. # 7.

Pursuant to the Scheduling Order, Doc. # 8, as modified by the Order Granting the Motion to Extend Deadlines, Doc. # 11, the parties filed their respective motions for summary judgment (collectively, "Motions") on December 15, 2020. See Doc. #'s 17, 18. In a footnote, Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") indicates that because Defendants filed a release of the garnishment of the Penn East Accounts, the remaining counts in the Complaint are moot. Pl.'s Mt. at 1 (unpaginated). The Motions, therefore, address only Plaintiff's claim under Count I for violation of the automatic stay. My predecessor, the Honorable Robert N. Opel,[1] directed the parties to address the applicability of the recent United States Supreme Court case, City of Chicago, Illinois v. Fulton, 141 S. Ct. 585 (2021), as it relates to the pending motions. See Doc. # 27. Each side submitted a supplemental legal brief on

---

[1] This proceeding was before Judge Opel until he retired in March 2021. The proceeding was then transferred to the Honorable Henry W. Van Eck until the undersigned was appointed in July 2021.

Fulton's applicability, the last of which was filed March 11, 2021. See Doc. #'s 28, 29. The matter is fully briefed and ready for disposition.

### III. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. Count I of the Complaint is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper pursuant to 28 U.S.C. §1409(a).

### IV. Facts

Pursuant to Local Bankruptcy Rules 7002-1 and 7056-1 which incorporate Local Rule 56.1 of the District Court, Plaintiff and Defendants each filed a Statement of Material Facts. See Doc. #'s 21, 26. Except for the issue of damages, there is no dispute as to the operative facts which would preclude the entry of summary judgment.

This proceeding presents a relatively simple fact pattern:

On March 20, 2018, Southlake Holdings, LLC ("Southlake") through its loan servicing agent, Auburn Loan Servicing, Inc. ("Auburn"), filed suit against Debtor in the Pennsylvania Court of Common Pleas, Luzerne County ("CCP Action") (Case No. 2018-CV-03555). Defendants' Statement of Material Facts, No. 1. On May 18, 2018, Southlake obtained a judgment in the CCP Action against Debtor in the amount of $33,282.01 ("Judgment"). Id. at No. 2. Southlake transferred the Judgment to Lackawanna County. Id. at No. 3. Southlake filed a praecipe for a writ of execution ("Writ") on November 4, 2019 against Penn East Federal Credit Union ("Penn East") as garnishee. Id. at No. 4. Southlake caused the Writ to be served on Penn East on November 26, 2019. Id. at No. 5. Debtor's accounts at Penn East were still

3

subject to attachment when Debtor filed his Bankruptcy Petition on December 17, 2019. Id. at No. 6.

Post-petition, Debtor's Counsel corresponded a number of times with Defendants' Counsel regarding Plaintiff's request that the attachment be discontinued because Plaintiff believed it was a violation of the stay. See id. at Nos. 7-9. In response, Defendants' Counsel communicated their position that they believed they were not required to withdraw the attachment. See id. at Nos. 8, 10.[2] Southlake subsequently withdrew the Writ on July 24, 2020, after Debtor's Chapter 13 plan (which provided for full payment of Southlake's claim) was confirmed. Defs.' Stmt. of Mat. Facts at Nos. 12-13.

### V. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a) (made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056): "The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." E.g., Steele v. Cicchi, 855 F.3d 494, 500 (3d Cir. 2017); Transguard Ins. Co. of Am. Inc., v. Hinchey, 464 F. Supp. 2d 425, 429 (M.D. Pa. 2006). Thus, the inquiry on a motion for summary judgment is to determine whether there is a disputed issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986); Hinchey, 464 F. Supp. 2d at 430. "A dispute of material fact is 'genuine' only if the evidence 'is such that a

---

[2]  In refusing to turnover or release the garnished funds, Defendants' Counsel relied upon an earlier case from this District in his letter dated January 17, 2020 specifically directing Plaintiff's counsel to "[p]lease see Judge France's opinion in In re Linsenbach, 482 B.R. 522 (Bankr. M.D. Pa. 2012) wherein she found that a creditor may refuse to release garnished funds to protect lien rights without violating the automatic stay." Doc. # 20.

4

reasonable jury could return a verdict for the non-moving party.'" Holbrook v. Jellen, 2017 WL 4401897, at *4 (M.D. Pa. Mar. 8, 2017) (quoting Anderson, 477 U.S. at 248).

The moving party has the initial burden to demonstrate "the absence of a genuine issue of material fact." United States v. Donovan, 661 F.3d 174, 185 (3d Cir. 2011) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the moving party meets this initial burden, then the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). On summary judgment, the court must draw all reasonable inferences in favor of the non-moving party. United States v. 717 S. Woodward St., 2 F.3d 529, 533 (3d Cir. 1993).

Where, as here, there are competing motions for summary judgment, the parties' respective burdens of proof are critical to the analysis. When the moving party has the burden of proof at trial on the underlying claim, the Third Circuit Court of Appeals characterized the standard as more stringent, explaining that the moving party must establish that no reasonable jury could find for the non-moving party in essence by producing enough evidence to justify a directed verdict in its favor. Donovan, 661 F.3d at 185; Kahle v. Roemmele (In re Roemmele), 2011 WL 4804833, at *4 (Bankr. E.D. Pa. Oct. 11, 2011). Thus, for Plaintiff to prevail on his motion, he must produce sufficient evidence on each element of his stay violation claim and demonstrate that Defendants have not come forward with evidence to create a triable factual dispute as to any aspect of the claim.

When the moving party does not carry the burden of proof at trial, the moving party has the initial burden of showing the absence of a genuine issue of material fact. Roemmele, 2011 WL 4804833, at *4. The moving party "has no obligation to produce evidence negating its

5

opponent's case. The moving party merely has to point to the lack of any evidence supporting the non-movant's claim." Nat'l State Bank v. Fed. Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986)). In this case, Defendants would be required to establish that Plaintiff has not supported one or more elements of his claim under §362(k) or that the undisputed evidence negates an element of the claim.

### VI. Discussion
#### A. The Parties' Respective Positions

As stated above, the remaining issue in this proceeding is whether Defendants violated the automatic stay, specifically §§362(a)(1)-(6), when they refused to withdraw the attachment once they became aware that Plaintiff had filed for bankruptcy protection. Plaintiff seeks damages pursuant to §362(k) for this alleged willful violation.[3]

Plaintiff's main contention is that a creditor must take an affirmative action to avoid violating the stay. Plaintiff relies primarily on In re Iskric, 496 B.R. 355 (Bankr. M.D. Pa. 2013), where Judge Opel found that the creditor violated the stay and the discharge injunction under §524(a)(2), by failing to seek a vacatur of a state court civil contempt order which resulted in the issuance of a bench warrant against the debtor and her subsequent incarceration in county prison for several days. 496 B.R. at 362.[4] Plaintiff further contends that the Fulton decision does not

---

3   According to Plaintiff, the only potentially disputed fact is the amount of damages. See Pl.'s Brief at 1 (unpaginated). The Court will note, however, that Count I of the Complaint did not allege that Plaintiff suffered any damages resulting from the alleged stay violation. The only reference to damages is contained in the wherefore clause which seeks an award of actual damages and attorneys' fees. Complaint at 5. Although Plaintiff did not allege any damages as a result of Defendants' alleged conduct, which also could be fatal to its claim, this matter should and is being decided based upon an analysis under Fulton, as set forth below.

4   In Iskric, the defendant creditor failed to respond to the debtor's adversary complaint and judgment as to liability for violating the automatic stay was entered by default. Id. at 358-59.

impact the disposition of this adversary proceeding. Plaintiff argues that Fulton held "only that mere retention of estate property after the filing of a bankruptcy petition does not violate §362(a)(3)." Fulton, 141 S. Ct. at 592. According to Plaintiff, Defendants here did not have possession of any property of Plaintiff, therefore, Fulton does not rule out that §362(a)(3) applies in this proceeding.

Conversely, Defendants argue that they took no post-petition affirmative action as to the Penn East Accounts, thereby maintaining the status quo as of the petition date, and thus no violation of the stay occurred. Defendants rely on In re Denby-Peterson, 941 F.3d 115 (3d Cir. 2019) and the Fulton decision in support of their position. They further argue that even though Fulton was limited to subsection (a)(3), its rationale can be applied to the other subsections of §362 at issue in this proceeding.

### B. The Automatic Stay – 11 U.S.C. §362(a)

Section 362(a) provides a fundamental protection of the debtor in bankruptcy and operates as an automatic stay against certain actions. The stay "serves the debtor's interests by protecting the estate from dismemberment, and it also benefits creditors as a group by preventing individual creditors from pursuing their own interests to the detriment of the others." Fulton, 141 S. Ct. at 589. Section 362(a) provides:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
>
> > (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim

7

Case 5:20-ap-00014-MJC    Doc 37    Filed 10/06/21    Entered 10/06/21 14:39:26    Desc
Main Document    Page 7 of 17

against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title…

11 U.S.C. §362(a)(1) - (6).

To recover for a violation of the automatic stay, a debtor must show by a preponderance of the evidence that: "(1) a violation of the stay occurred; (2) the creditor had knowledge of the bankruptcy case when acting; and (3) the violation caused actual damages." Kaushas v. Popple Constr., Inc. (In re Kaushas), 616 B.R. 57, 62 (Bankr. M.D. Pa. 2020) (citing Linsenbach, 482 B.R. at 526). "Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional." Kaushas, 616 B.R. at 62 (quoting In re Lansdale Family Rests., Inc., 977 F.2d 826, 829 (3d Cir. 1992)). Therefore, a creditor commits a willful violation of the stay, if it acts with knowledge that the bankruptcy petition has been filed. Boltz-Rubinstein v. Bank of Am. (In re Boltz-Rubinstein), 596 B.R. 494, 503 (Bankr. E.D. Pa. 2019) (quoting In re Lansaw, 853 F.3d 657, 664 n.4 (3d Cir. 2017)). A good faith belief that one's actions did not violate the stay is not a defense. In re

Webb, 472 B.R. 665, 2012 WL 2329051 at *15 (B.A.P. 6th Cir. 2012) (citing TranSouth Fin'l Corp. v. Sharon (In re Sharon), 234 B.R. 676, 688 (B.A.P. 6th Cir. 1999)). A debtor may recover "actual damages, including costs and attorneys' fees" for a willful violation of the stay. 11 U.S.C. §362(k)(1).

### C. Did Defendants' Inaction Violate the Stay?

The actions about which Plaintiff complains are perhaps more appropriately characterized as inactions. It is not disputed that Defendants obtained the pre-petition Judgment in the CCP Action and proceeded to execute on that Judgment by obtaining a Writ of Execution. Southlake caused the Writ to be served on Penn East and shortly thereafter, Plaintiff filed for bankruptcy.[5] Furthermore, it is undisputed that neither Southlake nor Auburn took any post-petition action with respect to the attachment of the Penn East Accounts. It is also undisputed that Defendants, after receiving notice of the bankruptcy filing and the imposition of the automatic stay, did not withdraw the attachment or take any action to cause the funds in the Penn East Accounts to be released, thereby making them again available to Plaintiff after his bankruptcy case was filed. It is this failure to take action that Plaintiff contends is a violation of the stay under §362(a)(1)-(6).

---

5      Judge France in her opinion in Linsenbach provided a thorough analysis of Pennsylvania garnishment law:

> Under Pennsylvania law, service of a writ attaches a debtor's property that is in the possession of the garnishee. Pa. R. Civ. P. 3111(b). Following service of a writ of execution on a garnishee, a judicial lien arises in favor of the creditor/garnishor that is perfected on the date of service of the writ. See In re R.H.R. Mechanical Contractors, Inc., 358 B.R. 202, 210 (Bankr. E.D. Pa. 2006). Service of the writ subjects the garnishee to injunctive orders of the writ restraining the garnishee from turning over the debtor's property—in this case, the funds on deposit—to the debtor. Pa. R. Civ. P. 3111[d].

Linsenbach, 482 B.R. at 526–27.

The Court will address each subsection of §362 alleged in the Complaint, starting with §362(a)(3) and the applicability of Fulton.

### 1. Fulton Requires an Act That Disrupts the Status Quo to Find a Stay Violation

Section 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."[6] The Supreme Court in Fulton confronted the issue of whether an entity violates §362(a)(3) by retaining possession of a debtor's property (which was lawfully retained pre-petition) after a debtor files for bankruptcy. Specifically, Fulton addressed the City of Chicago's refusal to release vehicles after it properly impounded the vehicles for failure to pay motor vehicle fines. 141 S. Ct. at 589. The debtors requested the vehicles be returned after their bankruptcy cases had been filed but the City refused. Id. In several matters on the same issue, the bankruptcy courts determined that the City's refusal was a stay violation and the appellate court affirmed. Id. However, the Supreme Court vacated the lower courts' decisions, holding that the mere retention of estate property after the filing of a bankruptcy petition does not violate §362(a)(3). Id. at 592.

The Supreme Court determined that the "most natural reading" of the operative terms of §362(a)(2), i.e., "stay," "act," and "exercise control," would be a prohibition on affirmative acts that disturb the status quo of estate property as of the petition date. Id. at 590. The Supreme Court further determined that the language of (a)(3) implies something more than merely having control of, or retaining power over, estate property. In reaching its holding, the Supreme Court rejected the debtors' argument that §362(a)(3) covers the mere retention of estate property

---

[6] Generally, property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). The Court finds that Debtor's funds in the Penn East Accounts constituted property of the estate.

10

because to do so would render the turnover provision in §542 superfluous and essentially transform §362(a)(3) into a blanket turnover provision.[7] The Supreme Court found that this was not the intent of Congress when it added the phrase "or to exercise control of property of the estate" in 1984 amendments.[8] Id. at 591-92. The Supreme Court specifically found that §362(a) imposes no "turnover obligation" and is not to be construed as an "enforcement arm of sorts for §542(a)…." Id. at 592. Furthermore, the Supreme Court found that the debtors' interpretation of §362(a)(3) would render the commands of §362(a)(3) and §542 as contradictory given the fact that §542 carves out specific exceptions to the turnover command. Id. at 591.

Prior to Fulton, the Third Circuit, in a case with a very similar analysis to Fulton, discussed this issue in In re Denby-Peterson, 941 F.3d 115 (3d Cir. 2019). The Court in Denby-Peterson analyzed the language and history of §362(a)(3) and its interplay with §542.[9] In Denby-Peterson, the debtor's car was repossessed by the secured creditor pre-petition and the creditor refused to return the car once the bankruptcy case was filed. The Third Circuit, in analyzing §362 versus §542, found that turnover is mandatory only "when the Bankruptcy Court says so in the context of an adversary proceeding brought under Rule 7001(1)." Id. at 131. The Third Circuit also found that the procedural requirement of filing and serving a complaint upon

---

[7] The "turnover" of estate property is governed by §542, which provides that an entity in possession of property of the bankrupt estate must turnover such property to the trustee. A proceeding to recover such property by the trustee or debtor must be brought by a separate adversary action and the filing of a complaint under Fed. R. Bankr. P. 7001(1).

[8] See Bankruptcy Amendments and Federal Judgeship Act of 1984, 98 Stat. 371.

[9] Interestingly, the Third Circuit acknowledged the pre-Fulton split in the Circuit Courts and chose to follow the "minority" of the circuits that held that a creditor does not violate the automatic stay by retaining possession of the collateral after being notified of the bankruptcy stay. Id. at 123-124. This position, as set forth therein, was confirmed by the Fulton Court.

11

the creditor "negates" any possibility that a creditor has a duty to automatically turn over property of the estate.  Id. at 129.

Here, Plaintiff argues that Fulton is distinguishable because the City of Chicago had possession of property of the estate and here, Defendants were never in possession of the funds in the Penn East Accounts.  Such a distinction is not particularly relevant and perhaps weighs more in favor of Defendants under the reasoning of Fulton since Defendants were not in actual possession of the funds or the Penn East Accounts.  The property of the estate here was in the possession of a "neutral" third party subject to a valid state court lien and Defendants would have had to request the state court to enter an order dissolving the valid pre-petition lien in order to return the property to Debtor.

Thus, applying the holding of Fulton to this case, the Court finds that Defendants' refusal to withdraw the valid state court pre-petition attachment of the Penn East Accounts does not violate §362(a)(3).  Defendants admittedly took no post-petition affirmative action as to the garnished accounts.  See In re Denby-Peterson, 576 B.R. 66, 80 (Bankr. D.N.J. 2017), aff'd sub nom. Denby-Peterson v. Nu2u Auto World, 595 B.R. 184 (D.N.J. 2018), aff'd sub nom. In re Denby-Peterson, 941 F.3d 115 (3d Cir. 2019) ("[Section] 362(a)(3)'s language, 'an act ... to exercise control,' is forward-looking, and thus a creditor must take some new, postpetition action to exercise control over the property of the estate in order to violate the stay." (quoting In re Cowen, 849 F.3d 943, 949 (10th Cir. 2017))).  They maintained the status quo as of the petition date.  They were not required to withdraw the attachment because to do so would put them in a more disadvantageous position than they had been as of the petition date and they were entitled to maintain the status quo.  See In re Miller, 2011 WL 6217342, at *3 (Bankr. D. Colo. Dec. 14,

12

2011) (holding creditor's refusal to release garnished funds, to potential detriment of its lien rights in those funds, does not violate automatic stay).

### 2. Defendants Did Not Violate §362(a)(4)-(6)

Although Fulton was specifically limited to §362(a)(3),[10] its reasoning can be applied to the other subsections of §362. Fulton determined that an affirmative act is likely necessary to violate §362(a)(3).[11] Similarly to §362(a)(3), subsections (a)(4), (5), and (6) also all begin with the phrase: "any act to …." Therefore, it logically follows that an affirmative post-petition "act" is necessary to constitute a violation of those subsections.

Sections 362(a)(4) and (a)(5) stay any act to create, perfect, or enforce liens against property of the estate and against property of the debtor, respectively. See e.g., In re Jackson, 403 B.R. 95, 100 (Bankr. D. Idaho 2009) (by recording its judgment post-petition, creditor engaged in act to create lien in violation of §362(a)(4)). Section 362(a)(6) stays "any act to collect, assess, or recover a claim against the debtor" that arose pre-petition.

Since Defendants' lien had already arisen pre-petition, i.e., once the Writ was served, see Linsenbach, 482 B.R. at 527 ("a judicial lien arises in favor of the creditor/garnishor that is perfected on the date of service of the writ"), Defendants would have had to have done something post-petition to enforce the lien to be in violation of §362(a)(4) and (5). See In re Laux, 181 B.R. 60, 62 (Bankr. S.D. Ill. 1995) ("Enforcement of a lien generally involves an affirmative act by the creditor against the collateral."). Here, it is not disputed that Defendants

---

[10] See Fulton, 141 S. Ct. at 592 ("Nor do we settle the meaning of other subsections of §362(a).").

[11] The Supreme Court's holding is qualified slightly: "We do not maintain that these terms definitively rule out the alternative interpretation adopted by the court below and advocated by respondents. As respondents point out, omissions can qualify as 'acts' in certain contexts." Fulton, 141 S. Ct. at 590.

13

took no action post-petition and gained no advantage with respect to Debtor or property of the estate. Thus, the mere retention of a valid pre-petition state court attachment or lien without more, is not a violation of §362(a)(4) - (6). This position is demonstrated by cases which hold that creditors holding a valid lien are not required to release that lien to avoid sanctions for violation of the stay. See e.g., In re Kuzniewski, 508 B.R. 678 (Bankr. N.D. Ill. 2014).

### 3. Defendants Did Not Violate §362(a)(1)

Turning next to the first subsection, §362(a)(1) prohibits the "commencement or continuation" of a judicial, administrative, or other action or proceeding against the debtor. Subsection (a)(1) is very broad in its reach and covers all types of legal proceedings. See Galmore v. Dykstra (In re Galmore), 390 B.R. 901, 910 (Bankr. N.D. Ind. 2008) ("Every proceeding of a judicial or quasi-judicial nature is affected." (quoting In re Joe DeLisi Fruit Co., 11 B.R. 694, 695 (Bankr. D. Minn. 1981))). For purposes of subsection (a)(1), "continuation" has generally been interpreted to mean the "carrying forward … of a proceeding that has already begun." Taylor v. Slick, 178 F.3d 698, 702 (3d Cir. 1999). It does not cover actions taken to continue, i.e., postpone a proceeding that preserves the status quo until the bankruptcy process has concluded. Id.

Plaintiff's argument as to this subsection is that the plain language of §362(a)(1) does not necessarily require an affirmative act to constitute a violation. In support of this proposition, Plaintiff relies on Iskric, supra, which held that a creditor must in fact take an affirmative action to avoid violating the stay. In Iskric, the creditor allowed the "continuation" of a state court order that resulted in the incarceration of the debtor post-petition. Indeed, Iskric is an example of a factual scenario where if a creditor has put a process into effect that, without intervention,

14

causes a change in the status quo as to property of the estate or the debtor, then a creditor must act to avoid that change. See Skillforce, Inc. v. Hafer, 509 B.R. 523, 531 (E.D. Va. 2014) ("A creditor or the creditor's legal representative has an affirmative duty, post-petition, to discontinue any proceeding it has initiated or continued, or to take other appropriate steps to halt that proceeding if the proceeding: (i) jeopardizes or threatens in any way the integrity of the bankruptcy estate, or (ii) exposes the debtor to harassment or coercion or otherwise inhibits the debtor's 'breathing spell from [her] creditors.'"); Galmore, 390 B.R. at 914 (creditor that causes bench warrant to be issued to collect debt has affirmative duty to seek recall of warrant).

      This Court agrees with the Court's findings in Iskric under those facts. However, Iskric is factually dissimilar to the case before the Court. Again, the undisputed facts are that the last act Defendants took pre-petition was that they properly caused the Writ and interrogatories to be served upon the garnishee in furtherance of the garnishment. Plaintiff theorizes that without some intervening act by Defendants, the garnishment would have continued until Defendants obtained a judgment against the garnishee thus resulting in funds being transferred from Penn East to Defendants and the funds released. However, pursuant to the Pennsylvania Rules of Civil Procedure, Defendants (and the garnishee) would have had to take several affirmative steps in order to have a judgment entered in favor of Defendants. See Pa. R. Civ. P. 3144-3148.[12] Factually, this case is more similar to a lawsuit that merely remains pending after a debtor's bankruptcy case is filed. In that instance, the creditor is not required to withdraw or dismiss an action. See e.g., In re Guido, 2021 WL 2226613, at *4 (Bankr. S.D. Cal. June 1, 2021) ("It is not a stay violation to allow pre-petition state court litigation to lie dormant during a bankruptcy case.").

---

[12]     Had Defendants actually advanced the garnishment action post-petition as Plaintiff theorizes, such "action" would constitute a violation of the automatic stay.

15

The Court finds that §362(a)(1) was not violated because Defendants did nothing to further or "continue" the garnishment process. Nothing has been alleged in the record indicating that the status quo was somehow changed regarding the Penn East Accounts after the bankruptcy petition was filed.

### 4. Defendants Did Not Violate §362(a)(2)

The last subsection at issue here, §362(a)(2) stays the enforcement of a pre-petition judgment against a debtor or property of the estate. §362(a)(2). "Enforcement" is defined as "[t]he act or process of compelling compliance with a law, mandate, command, decree, or agreement." Black's Law Dictionary (11th ed. 2019). Similar to the discussion above as to the other subsections, some action to enforce a pre-petition judgment must be taken in order to violate subsection (a)(2). See e.g., Renzulli v. Ullman (In re Renzulli), 2015 Bankr. LEXIS 4439, at *24 (Bankr. D.N.J. Nov. 23, 2015) (contempt petition which was in part pecuniary and brought to enforce underlying state court order held to be violation of §362(a)(2)); In re Marcott, 30 B.R. 633, 636 (Bankr. W.D. Wis. 1983) (execution on real estate is enforcement against debtor of pre-petition judgment); In re Butler, 14 B.R. 532, 534 (S.D.N.Y. 1981) (issuance of state court warrant of eviction is enforcement of judgment against debtor). But, the failure to withdraw a valid pre-petition attachment lien cannot be construed as, or equated with, taking an affirmative action to enforce a judgment. The Court concludes that Defendants' passive maintenance of its valid pre-petition attachment lien in no way changed the status quo and therefore, did not constitute a violation of §362(a)(2).

## VII. Conclusion

For the reasons stated above, Plaintiff has failed to establish that Defendants' refusal to withdraw the valid pre-petition attachment once they were informed that Plaintiff had filed for bankruptcy was a violation of §362(a)(1) - (6). Therefore, summary judgment will be entered in favor of Defendants and against Plaintiff.

An appropriate order will be entered.

Dated: October 6, 2021

By the Court,

Mark J. Conway, Bankruptcy Judge (CN)